UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STONEBRIDGE OPERATING CO., LLC,
*et al.*,

        Plaintiffs,

                                    Case No. 2:19-cv-1714
    v.                            JUDGE EDMUND A. SARGUS, JR.
                                      Chief Magistrate Judge Elizabeth P. Deavers
ANTERO RESOURCES CORP.,

        Defendant.

OPINION AND ORDER

This matter is before the Court on Defendant's Moton to Exclude Expert Testimony
(ECF No. 83), Plaintiff's Memorandum in Opposition (ECF No. 86), and Defendant's Reply in
Support of its Motion (ECF No. 87).  For the reasons set forth below, the Court **DENIES**
Defendant's Motion.

**I.**

This case involves an oil and gas contract dispute between two sophisticated parties.
Stonebridge Operating Co. and Positron Energy Resources, Inc.'s (together "Stonebridge") and
Defendant Antero Resources, Corp. ("Antero") agree that they negotiated and ultimately signed a
document drafted by Antero titled "Purchase and Sale Agreement" ("PSA"), which this Court
found to be a binding contact.  (Compl. ¶¶ 10, 14, ECF. No. 1; PSA at 1, ECF No. 1-1.)

On summary judgment, the Court concluded that it was for a jury to determine whether
the PSA was breached and whether Antero should be excused from performance under the PSA.
The Court explained that, if the jury finds that Defendant breached the PSA, Plaintiff will have
the opportunity to prove that it is entitled to damages in the amount sufficient to place it in the

same position in which it would have been if the contract had been fully performed by Antero to

the extent that the damages were reasonably certain and reasonably foreseeable.

Defendant has filed a Motion to Exclude Expert Testimony of Z. Hunter Hill.

**II.**

Rule 702 of the Federal Rules of Evidence governs the use of expert testimony,

providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to the facts of
> the case.

Fed. R. Evid. 702.

This rule, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v.*

*Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S.

137 (1999).  Fed. R. Evid. 702 advisory committee's notes, 2000 amend. ("In *Daubert* the Court

charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert

testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert

testimony, not just testimony based in science.").

This Court has broad discretion to determine whether to admit or exclude expert

testimony.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) ("[W]e will not

substitute our own judgment for that of the district court and will reverse an evidentiary decision

"only where we are left with a definite and firm conviction that [the district court] committed a

clear error of judgment." (citation omitted)).  The burden is on the party proffering the expert

report and testimony to demonstrate by a preponderance of proof that the opinions of their

experts are admissible.  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Determining the admissibility of expert testimony entails a flexible inquiry and any

doubts should be resolved in favor of admissibility.  *Daubert,* 509 U.S. at 594; Fed. R. Evid. 702

advisory committee's notes, ("[A] review of the case law. . . shows that rejection of the expert

testimony is the exception rather than the rule."); *Jahn v. Equine Services, PSC,* 233 F.3d 382,

388 (6th Cir. 2000) (stating that in *Daubert* "[t]he Court explained that Rule 702 displays a

liberal thrust with the general approach of relaxing the traditional barriers to opinion testimony"

(internal quotations omitted)).  Additionally, if the evidence is deemed admissible by a court, but

it is ultimately found "insufficient to allow a reasonable juror to conclude that the position more

likely than not is true, the court remains free to direct a judgment."  *Daubert*, 509 U.S. at 596;

*see also* Fed. R. Civ. P. 50.

**III.**

Mr. Hill offers the following opinions:

My overall opinion in this matter is that it would have been very difficult for Stonebridge to sell the remainder of the Stonebridge Position (except for perhaps a small portion of the acreage near the Magnum Hunter wells in Washington County), at any non-nominal price at any time (to present) after Antero's initial acreage purchase and exploratory well in the area, and especially at any time after December of 2013.

This is due to three factors: 1) The exploratory wells in the area, especially prior to the 2017 Triad Hunter wells, are of poor quality; 2) The stigma associated with Antero's decision to not close on the other acreage; 3) The industry appetite for undeveloped acreage deals has declined steadily since 2013 in this area as a result of low prices, operator consolidation, and an abundance of undeveloped acreage already owned by existing operators.

(Hill Expert Opinion at 3, ECF No. 86-4.)

Defendant argues that Mr. Hill's opinions are irrelevant, unreliable, and he is unqualified to render them.  This Court disagrees.

## A.	Qualifications

Mr. Hill's qualifications are offered in his Expert Opinion and his deposition testimony. Mr. Hill has 19 years of experience in the oil and gas industry. This experience began in 2002 when he became the President of Hill Energy Company.  In that position, Mr. Hill was the sole executive and thus responsible for all aspects of the company including but not limited to overseeing the day-to-day operations of Hill Energy Company's operated wells in Southeast Oklahoma as well as its non-operated interests in Texas.

Following that assignment, and in 2008, Mr. Hill became the Chief Financial Officer and Co-Founder of LPR Energy, LLC. As Mr. Hill describes that position:

> I am responsible for the long-term strategic decisions and financial leadership, and directly manage the legal, financial, and M&A operations of the company. LPR Energy, LLC operates 34 producing unconventional Marcellus Shale wells in Pennsylvania and 23 producing Permian Basin wells in Texas, covering a leasehold of 35,000 acres, and producing approximately 25 MMCFF/day. LPR Energy is roughly the 20th largest producer of natural gas in Pennsylvania depending on the method of measurement. In its incarnation as Little Pine Resources, acquired 25,000 acres of leasehold in joint venture (and then sale) with EXCO Resources and BG Group, LPR Land Services group was spun out of Little Pine Resources and re-merged with LPR Energy, LLC. During this time period we managed large land service contracts for Noble Energy, EXCO, and Seneca Resources.

(Hill Expert Opinion at 14, ECF No. 86-4.)

Mr. Hill is the Manager and Co-Founder of PennMarc Resource Funds, "an investment vehicle to acquire, manage, and optimize returns on mineral, royalty and overriding royalty properties. PennMarc Resources for itself and on behalf of its partners manages over 10,000 acres across Pennsylvania, West Virginia, and Ohio." *Id.*

4

Mr. Hill is also the Manager of Appalachian Basin Minerals, LP. As Mr. Hill describes

that position: "Appalachian Basin Minerals is a master-limited partnership which [he] co-created,

and which is actively managed by PennMarc Resources. It has invested over $42M of private

capital in oil and gas minerals and royalty interests in Pennsylvania, Ohio and West Virginia."

He further indicates that "[d]uring the acquisition phase of the partnership, [he] chaired the

acquisition board and was responsible for valuation of prospects." *Id*.  As Mr. Hill summarizes

his experience:

> I have attached a copy of my CV to this report showing my professional as well as
> testimonial experience. In addition to my professional credentials, I've relied on
> my professional experiences when forming these opinions. Of particular relevance
> to this assignment, I have examined, priced and bid on hundreds of well and lease
> packages in Appalachia and Texas, including sitting through all of the investor
> presentations and reviewing the pre-bid due diligence materials, and often perform
> post-sale diligence on packages which were not acquired to determine whether my
> assumptions about said packages were correct.
>
> LPR Energy has acquired multiple packages of wells and leases during my tenure,
> most saliently, a series of acquisitions from Chevron which required substantial due
> diligence. In its previous incarnation as Little Pine Resources, we acquired 25,000
> acres of leashold principally in Clearfield County, Pennsylvania in a joint venture
> and eventual sale to EXCO Resources and BG Group. I have also prepared investor
> presentations and sold portions of our working interest to outside investment
> groups. Through PennMarc and Appalachian Basin Minerals, I am responsible for
> evaluating the value of our mineral (royalty) holdings which necessarily also
> involves an intuition of the working interest's development intentions. Finally, I am
> a third-generation oil executive and have been professionally involved with the
> industry since 2002 when I became President of my grandfather's oil company.

*Id*. at 2.  As part of his work, Mr. Hill has had business discussions with Antero in situations

where Antero is the operator related to certain of his fund's or partnership's mineral interests.

Mr. Hill also has personal experience evaluating lease packages in the Utica/eastern Ohio area.

Defendant contends that Mr. Hill is unqualified to offer his opinions because he "has no

relevant experience or expertise on oil and gas lease transactions in Ohio admit[ting] that before

2016, he lacked 'any experience buying or selling leases in Ohio." (Mot. at 13.)  Defendant

5

maintains that "[t]he way value would be allocated to leases was therefore significantly different in 2012-13 than it was in 2016 or today, where that value is more commonly allocated to producing or proven reserves." *Id.*

Defendant's complaints, however, go to the weight of Mr. Hill's testimony, not its admissibility. It is well established that experience-based testimony satisfies Rule 702 admissibility requirements. *See Kumho Tire Co., Ltd.,* 526 U.S. at 141; *United States v. Poulsen,* 543 F. Supp. 2d 809, 811-12 (S.D. Ohio 2008). The Court finds Mr. Hill is qualified to render the decisions offered in this case.

## B.     Relevance

Under Rule 702 of the Federal Rules of Evidence and *Daubert,* an expert opinion is not admissible unless it is relevant to the facts at issue in the case. Federal Rule of Evidence 401 defines relevance as evidence that "has any tendency to make a fact more or less probable without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Sixth Circuit has interpreted relevancy under Rule 401 generously, describing the "relevance threshold" as "very low," *United States v. Sumlin,* 956 F.3d 879, 889 (6th Cir. 2020) (quoting *United States v. Whittington,* 455 F.3d 736, 739 (6th Cir. 2006)), and "extremely permissive," *United States v. Pritchard,* 964 F.3d 513, 526 (6th Cir. 2020) (quoting *Wood v. Wal-Mart Stores, E., LP,* 576 F. App'x 470, 472 (6th Cir. 2014)). Evidence must simply have "the slightest probative worth." *United States v. Inzunza-Arenas,* 831 Fed.Appx. 778, 782–83 (6th Cir. 2020) (quoting *Whittington,* 455 F.3d at 738–39). *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liab. Litig.,* 518 F. Supp. 3d 1028, 1042 (S.D. Ohio 2021)

Because Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence,'" expert testimony "which does not relate to any issue in the case is not

6

relevant and ergo, nonhelpful." *Daubert*, 509 U.S. at 590–90.  "In other words, there must be a

'fit' between the proposed testimony and the question(s) presented by the case at bar." *Daubert*,

509 U.S. at 591.

Defendant contends that Mr. Hill's testimony is irrelevant because he does not opine on

the correct standard of damages and because he focuses on the wrong time period.  Defendant,

however, made these arguments without the benefit of this Court's decision on the parties' cross

motions for summary judgment.  In the Court's decision, it explained:

> Defendant posits that the exclusive measure of damages in this case "is the
> difference between the contract price and the market value of the property at the
> time of the breach." (Def. Mot. for Summ. J. at 15–16, ECF No. 67) (citing *Roesch
> v. Bray*, 46 Ohio App.3d 49, 50 (6th Dist.1988); *Poppy v. Whitmore*, 8th Dist.
> Cuyahoga No. 84011, 2004-Ohio-4759, ¶ 10. Plaintiff agrees that this is the general
> rule of damages but contends that the law in Ohio does not dictate that it is the
> exclusive rule.  This Court agrees.
>
> In Ohio, "even if the difference between the contract price and the market value of
> the property at the time of the breach was an appropriate method for determining
> appellee's expectation damages . . . it was not the exclusive measure of such
> damages, nor was it the exclusive remedy available to appellee." *The Father's
> House International, Inc., v. Kurguz*, 2016-Ohio-5945, E.3d 711 (10th Dist. 2016).
> See also, *Anadarko E&P Co. LP v. Northwood Energy Corp.*, 2:12-CV-00938,
> 2015 WL 13748033 (S.D. Ohio July 24, 2015) (discussing damages available in a
> PSA dealing with oil and gas rights).  "The purpose of contract damages is to
> compensate the non-breaching party for the losses suffered as a result of a breach."
> *Id*.

(Order & Opinion at 11–12, ECF No. 124.)

As to the time period upon which Mr. Hill focuses, Defendant will have the opportunity

to explore this on cross examination.  The Court finds Mr. Hill's testimony and opinion are

helpful to the jury, which can give as much weight to the testimony it chooses, including no

weight.  The Court concludes that Mr. Hill's experience-based testimony and opinions "may well

assist the trier of fact in understanding the evidence and/or in determining a fact in issue." *Id*.

C.      **Reliability**

To assess reliability, Rule 702 provides that the testimony must be based on "sufficient

facts or data," be the "product of reliable principles and methods" and the expert must apply "the

principles and methods reliably to the facts of the case."  Fed. R. Evid. 702. Defendant contends

that Mr. Hill's report and testimony must be excluded as unreliable and lacking foundation.

Mr. Hill engaged in the following methodology to conclude that Ohio oil and gas

operators would not be interested in Stonebridge's leases; Stonebridge could not sell its leases in

and after 2013; and certain wells drilled proximate to Stonebridge's leases were of "poor

quality."  Mr. Hill explained:

> I first examined the leasehold mapping and pulled information on what comparable
> wells from the area I could find. Next, I noted the operators of each of those wells,
> examined their positions and pulled comparable acreage deals from the area which
> hopefully would tell me about the plans of various operators in the area. I also
> looked at anomalous matters, such as what appears on mapping to be a PDC permit
> near this acreage, or some Antero wells which were very close to the position.
> Finally, in my report I tried to describe the industry conditions that this information
> would be received into. In the case of the Stonebridge Position, I would not
> recommend that my board undertake a full workup of this position in anticipation
> of submitting a bid, and it is my opinion that the majority of other executives in the
> industry would view the Stonebridge Position in a similar light.

(Hill Expert Report 4–10, ECF No. 86-4.)

A sampling of Defendant's complaints about the reliability of Mr. Hill's opinion and

testimony is that he has not "reached out or tried to survey or poll any of those oil and gas

operators in terms of how they actually evaluated Ohio acreage in 2013-14; "[h]e did not talk

with anyone at these companies about how they evaluated acreage in Ohio in 2013-14, [n]or did

he review any Ohio operators' development plans as of 2013 for this area near the Stonebridge

position"; he "did not even interview anyone at Stonebridge (his own client) before reaching his

opinion; "He never spoke with Stonebridge's president, Eddy Biehl, to ask him what actions he

or Stonebridge took to sell leases, or whether Stonebridge actually received any interest from potential purchasers in 2013, 2014, 2015 or in any of the six years before Stonebridge filed this lawsuit"; "Mr. Hill wrongly assumes that production results are exclusively a product of a well's geography, admits he has no basis for commenting on the economics of the wells he cites in his report, and leaves a serious analytical gap concerning how wells drilled post-2015 could inform the marketability of Stonebridge's acreage in 2013-2014"; "[f]our of the six wells Mr. Hill cites in his report were not producing until 2015 or later. (Def's Mot. and Reply, ECF No. 83, 87.)

"[C]ritiques of an expert's evidence gathering techniques . . . generally go to the weight of the evidence, not its admissibility." *Little Hocking*, 2015 WL 1055305, at *14 (S.D. Ohio Mar. 10, 2015) (citing *United States v. Stafford*, 721 F.3d 380, 395 (6th Cir. 2013)). This Court has previously observed that "[c]riticism of which facts were selected or relied upon 'go to the weight of [the] testimony, not its admissibility.'" *Id*. (stating that "when such differences in interpretation rest on rationale grounds—[it] is an issue more appropriately addressed on cross-examination"). Defendant's complaints are all best addressed on cross examination. A court's "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" evidence a party finds lacking. *Wellman v. Norfolk & Western Ry*., 98 F. Supp. 2d 919, 924 (S.D. Ohio 2000) (quoting *Daubert*, 509 U.S. at 596).

## IV.

For the reasons set forth above, the Court **DENIES** Defendant's Moton to Exclude

Expert Testimony.  (ECF No. 83.)

        **IT IS SO ORDERED.**


**7/7/2022**                                 **s/Edmund A. Sargus, Jr.**
**DATE**                                     **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**